Ray SNYDER, Plaintiff,

v.

Dr. Leland JENSEN, Respondent,

Oral H. McCubbin, Administrator of Estate of Edward Pace, Deceased, Appellant.

No. 44467.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Motions for Rehearing or to Transfer to Court en Banc and to Modify Opinion Denied Sept. 12, 1955.

Wilbur C. Schwartz, St. Louis, for (defendant) appellant, Joseph Nessenfeld, St. Louis, of counsel.

Charles E. Gray, St. Louis, for respondent.

COIL, Commissioner.

Ray Snyder, a passenger in Dr. Leland Jensen's automobile, brought an action against Jensen and Oral H. McCubbin, administrator of the estate of Edward Pace, deceased, for damages for personal injuries sustained in an accident which occurred on February 8, 1953. Defendant, Jensen, filed a cross-claim in that case against McCubbin, his codefendant. On plaintiff's motion, the court ordered a separate trial of the cross-claim. Thereafter, Snyder obtained a judgment against both defendants which we affirmed in Snyder v. Jensen, Mo., 281 S.W.2d 803, decided concurrently herewith. Jensen (as it happened, within a week after Snyder's case had been tried) proceeded to trial of the instant case and obtained a verdict and judgment for $20,000 on his cross-claim. McCubbin has appealed and contends: that Jensen was barred from maintaining his cross-claim by reason of the judgment entered in Snyder's suit against both Jensen and McCubbin; that Jensen made no submissible case on the theory embodied in his verdict-directing instruction; that the trial court erred in giving instructions, in the admission of evidence, and in permitting Jensen's counsel to make prejudicial jury arguments; and that the judgment is grossly excessive.

It is apparent from what we have said that Snyder v. Jensen, supra, and the instant case arose from the same accident. The evidence as to the facts of the accident, however, was not the same in all respects in the two cases. This, because Jensen was plaintiff's witness in Snyder while his testimony as to the facts of the casualty was excluded in the instant case on the ground that Edward Pace (whose estate was defendant on Jensen's cross-claim) was dead. We shall state the facts as they appear in the instant record from a standpoint favorable to cross-claimant.

On February 8, 1953, about 9:30 a. m., cross-claimant Jensen was operating his Chrysler automobile at 100 miles per hour,

eastwardly in the eastbound traffic lane of east-west Highway 166 ( 22'-wide, 2-lane black-top, on which was a white center line, with red clay and rock, hard-packed, 10' shoulders on each side) between Joplin and Springfield. At the same time Edward Pace was operating his Cadillac automobile at 100 m. p. h., also eastwardly on that highway, in the westbound traffic lane, abreast of Jensen's Chrysler. A milk truck (a 2½-ton G.M.C. equipped with a special "milk bed" and loaded with milk and milk cans) was also proceeding eastwardly ahead of (i. e., to the east of) the Cadillac and the Chrysler. Thereafter, the Cadillac struck the left rear of the milk truck and the Chrysler turned off the pavement and subsequently collided with a concrete culvert, under the circumstances to be stated.

The Cadillac-truck collision point was a place 8 to 10 feet west of the west edge of a farm driveway which ran north from the pavement's north edge. The driveway was about 600 feet east of a hill crest. When the milk truck reached the hill crest its driver, Kennedy, gave a left-turn arm signal which he continued until the collision. When the truck was about 100 feet west of the driveway it had pulled left to the center line. At that time Kennedy looked in the truck's rear-view mirror and saw for the first time the Chrysler in the eastbound and the Cadillac in the westbound lane approximately side by side just as they began their descents from the hill crest. The truck continued to pull to its left until the Cadillac began to slide or skid. The truck then began to pull back to the right (i. e., in an attempt to return to the eastbound lane) and was partially in the eastbound lane when its left rear was struck by the Cadillac's left front end and side. At the time of the collision the truck's left rear dual wheel was 4 feet north of the center line and the truck was facing southeast. The truck bed extended about 5 feet to the rear of the rear wheels.

The Cadillac from a place 205 feet west of the collision point made a skid mark 45 feet long parallel with the pavement's center line, then skidded in a sideway posi-

tion (i. e., with its front to the south and east and and its rear to the north and west) for another 160 feet into the truck. The Cadillac's front wheels were to the south of the center line a distance of one foot for the last 20 feet prior to impact and the Cadillac's front bumper extended to the front 3'1" from the center of the front hub cap. The Cadillac "pivoted" in a circle to the west, then east, and came to a stop 75 feet east of the collision point and on the north shoulder. Both occupants of the Cadillac were killed. The truck proceeded southeastwardly and stopped on the south shoulder 300 feet east of the collision point.

Kennedy, the truck driver, lost sight of the Chrysler when the Cadillac began to slide at which time the Cadillac appeared to have passed the Chrysler. There were light skid marks made by the Chrysler for a few feet before it left the pavement at a point about 30 feet west of the Cadillac-truck collision point. Its skid or wheel marks showed that it left the pavement, crossed the south shoulder, entered a shallow ditch to the south of the shoulder and proceeded eastwardly into collision with a concrete culvert abutment and came to rest 270 feet east of the Cadillac-truck collision point.

Kennedy testified: that the Chrysler struck the culvert an instant before the Cadillac struck the truck; that the Cadillac passed the Chrysler; that from the driveway to the west the pavement is uphill for 600 feet to the hill crest where the pavement "levels off" for about .3 of a mile; that he was not looking to the rear during the time the truck proceeded eastwardly from the hill crest to a place 100 feet west of the driveway; and that he thought he would have seen the Chrysler and the Cadillac sooner if he had been looking in his rear-view mirror during the entire time the truck moved from the hill crest to the place 100 feet west of the driveway.

Cross-claimant's witness, a state highway patrolman, testified that some time following the accident Jensen stated that "the Cadillac was in front of me and started

to pass the truck and the truck pulled into him," but that he did not state how far the Cadillac was in front of him.

Inasmuch as we have reached the conclusion that this case must be reversed and remanded because of lack of evidence to justify the submitted hypothesis of negligence, we need not consider many of appellant's instant contentions. It is advisable, however, to deal with two of those contentions preliminary to a consideration of the decisive matter above noted.

Appellant, as we understand, contends that cross-claimant Jensen may not, in any event, recover in this action for the reasons: that it was adjudicated in Snyder v. Jensen, supra, that Jensen was guilty of negligence which contributed to cause his injury, and that to permit Jensen to succeed in this action would allow him to recover on a factual theory directly contrary to his personal testimony in Snyder v. Jensen, supra. Of these in reverse order.

It is true that Jensen testified in the Snyder case that the Pace Cadillac was at the time in question proceeding eastwardly in the eastbound lane about *75 feet ahead of Jensen's Chrysler* when the Cadillac pulled to its left into the westbound lane for the purpose of passing the milk truck which was then about 700 feet to the east. And it is also true that the theory of Jensen's instant sole verdict-directing instruction (later to be set forth) was that Pace was negligent *in passing Jensen* at the top of a hill. The trouble with the contention, however, is that in the instant trial Pace's administrator chose to object to Jensen's testimony concerning the facts of the casualty and, absent such testimony, the evidence (the testimony of the truck driver) was that the Cadillac did pass the Chrysler. So that Jensen could, under the circumstances, proceed on the evidence which appeared in his case, even though, had he testified, a different situation may have prevailed. But, in any event, it further appears that we cannot know what Jensen's testimony would have been concerning the question of whether the Cadillac did or did not pass his Chrysler had he testified to

the facts of the casualty in the instant case. If he had testified to the same facts as he did in the Snyder case, he would have been bound by such and could not have recovered on his instant theory. If, however, he had testified contrary to his former testimony, such would not necessarily have been wholly lacking in probative value, but, rather, his credibility, in the event of impeachment by his prior testimony, may have been a jury question. McNatt v. Wabash R. Co., 341 Mo. 516, 528 [4], 108 S.W.2d 33, 39 [6-8].

■ Suffice to say, as to McCubbin's contention that Jensen's causal negligence is res judicata, that there was neither pleading nor proof of any such issue. Res judicata is an affirmative defense and must be presented affirmatively in some pleading. Section 509.090 RSMo 1949, V.A. M.S.; Hamilton v. Linn, 355 Mo. 1178, 1181 [5], 200 S.W.2d 69, 71 [5, 6]. Furthermore, the defense must be supported by evidence, of which there was none adduced on that issue. Hamilton v. Linn, supra, 200 S.W.2d 71 [7].

■ McCubbin's connected contention that the trial of Jensen's cross-claim was in reality a part of the prior Snyder case, and not an independent action, is not tenable. Jensen's claim against the Pace estate was the subject of an independent action and also the subject of a permissive cross-claim in the Snyder case. Section 509.460 RSMo 1949, V.A.M.S. As noted, the trial court ordered a separate trial of the cross-claim. Section 510.180, subd. 2 RSMo 1949, V.A.M.S. (While appellant makes the statement that a separate trial should not have been ordered, he has not assigned the trial court's action as error and he has not developed the stated conclusion. Under the circumstances there is no contention before us that the trial court abused its discretion in ordering a separate trial of Jensen's cross-claim. Biggs v. Crosswhite, 240 Mo.App. 1171, 1182, 225 S.W.2d 514, 521 [6].) After the trial court's order, the instant trial was an independent action to the same extent as though Jensen had filed his claim as a separate

suit. 42 V.A.M.S.S.C. Rule 3.29; State ex rel. Algiere v. Russell, 359 Mo. 800, 804 [2], 223 S.W.2d 481, 483 [7].

Jensen's sole verdict-directing instruction was: "The Court instructs the jury that under the law of this State, the driver of a vehicle overta[k]ing a vehicle going in the same direction and desiring to pass the same shall pass to the left of the vehicle so overtaken; provided that no driver shall pass a vehicle from the rear at the top of a hill or on a curve where the view ahead is in any way obstructed. An operator or driver overtaking or desiring to pass a vehicle going in the same direction shall sound his signaling device.

"Therefore, the Court instructs the jury that if you find and believe from the greater weight of the credible evidence that on the occasion in question, the plaintiff was operating his automobile eastwardly along Highway No. 166, *and Edward Pace, deceased, passed the plaintiff's vehicle on a hill and at a point where the view ahead was obstructed;* and if you further find and believe from the evidence that *after passing* the plaintiff, Edward Pace, deceased, in attempting to stop his automobile or slacken its speed, caused or permitted said automobile to move from the north portion of said highway partially into the southbound traffic lane of said highway and in such dangerous and close proximity to the plaintiff's automobile that plaintiff in order to avoid colliding with the automobile of Edward Pace, deceased, drove his automobile from the paved portion of said highway and onto the shoulder thereof and collided with an abutment, as a direct result of which, he sustained bodily injuries and damages; and if you further find and believe from the evidence that *in so passing plaintiff's vehicle,* the said Edward Pace was negligent, and if you find that such negligence of Edward Pace, if any, directly caused plaintiff to be injured and to sustain damage, or if you find that such negligence, if any, of Edward Pace directly combined and concurred with the conduct, actions, or omissions, if any, of the driver of the milk truck and thereby directly contributed to cause plaintiff to be injured and

to sustain damages, then the Court instructs you that in either event, plaintiff is entitled to recover, and your verdict should be in favor of plaintiff and against the defendant." (Italics ours.)

Considering the foregoing instruction as a whole we cannot escape the conclusion that the jury would understand that the sole negligence hypothesized was that of Pace in having passed Jensen's automobile at a point on a hill where the view ahead was obstructed. We recognize that the jury was required to find conjunctively that "after passing" Jensen, Pace, in attempting to stop or slacken his automobile, caused it to move from the westbound lane partially into the eastbound lane in close proximity to Jensen's automobile causing Jensen to turn off the pavement to avoid a collision with the Cadillac. But the negligence submitted was "that in so passing plaintiff's vehicle", i. e., as we understand it, in "so passing" on a hill where the view ahead was obstructed. The noted facts hypothesized in the conjunctive are facts which, if found, may have authorized the jury also to find that the passing on a hill where the view ahead was obstructed proximately caused the Chrysler to turn off the pavement. Clearly, however, those facts were not hypothesized as the facts to be found as constituting negligence.

So construing the instruction, we are of the opinion that the evidence did not support the submitted hypothesis that Pace passed Jensen on a hill where the view ahead was obscured or obstructed. Section 304.020(5) RSMo 1949, V.A.M.S., in effect at the date of the instant casualty repealed L.1953, H.B. 48 § 1, p. 588; see: new section 304.016, provided, inter alia, "that no operator or driver shall pass a vehicle from the rear at the top of a hill or on a curve where the view ahead is in any way obscured." It would appear that the quoted provision was intended to prohibit passing where a hill obscured the prospective passer's view ahead.

The truck driver testified that the Cadillac "was passing" or "passed" the Chrysler. It may well be, considering all of his

testimony, that what he meant was that when he first saw the two automobiles they were side by side and consequently he assumed that the Cadillac, because it was in the westbound lane, was passing the Chrysler. But assuming that there was sufficient evidence from which a jury could find that the Cadillac passed or was passing the Chrysler, still there was not sufficient evidence from which a jury reasonably could find that the passing or any part thereof occurred at a place on a hill where the Cadillac driver's view ahead was in any way obscured by the hill or otherwise. That conclusion is compelled because of these facts. There was no evidence concerning the western approach to the hill crest; Kennedy testified that from the driveway (approximate Cadillac-truck collision point) the pavement "goes uphill [for approximately 600 feet] then it levels off for approximately three tenths of a mile" and that, in effect, he did not know how soon he could have seen the Chrysler and the Cadillac approaching if he had been looking during the time he descended the hill; there was no evidence as to the degree of the grade or slope of the hill from its crest to the east; there were photographs in evidence showing the accident scene and clearly depicting a hill but they are not helpful in view of the absence of testimony as to what the pictures show concerning the grade of, or any obscuring or obstructing effect of, the hill as one approaches from the west to a place 600 feet east of the hill crest and we, therefore, may attach no significance to the photographs on the instant question; there was no evidence as to an automobile driver's view to the east from any place in his approach to the driveway 600 feet east of the hill crest; and there was no evidence as to where the Cadillac left the eastbound lane to begin the act of passing the Chrysler.

In brief, all the evidence, considered favorably from Jensen's standpoint and giving him the benefit of all reasonable favorable inferences therefrom, shows only that the Cadillac, in passing, was abreast of the Chrysler as the two automobiles began to descend the hill. In view of cross-claimant's evidence that the hill top was level for 1,584 feet, and in view of the total absence of any evidence, either direct or circumstantial, as to where an automobile driver's view to the east would have been obscured because of the hill, and in view of the absence of evidence as to where the Cadillac's passing began, a jury reasonably could not have found that Pace, driving the Cadillac, began to, or continued to, pass Jensen's Chrysler on a hill at a place where his view to the east was in any way obscured. A jury could have so found only by speculation and conjecture outside of and beyond the scope of the evidence adduced. No authority need be cited for the proposition that there must be an evidentiary basis for the allegedly negligent acts hypothesized in an instruction.

In view of our ruling that there was not sufficient evidence to support the hypothesis of negligence submitted, and because we may not know what course this case may hereafter take, we deem it inadvisable to discuss the other grounds upon which instruction 1 has been attacked. Nor shall we rule the attacks made upon other instructions given at Jensen's request, or the questions concerning the admission of evidence, the propriety of certain jury arguments, and the size of the verdict. In the event of a retrial, these latter matters may not recur, and, in the event of a retrial, Jensen will undoubtedly wish to draw his instructions in the light of appellant's attacks upon his instant instructions.

■ In urging that the trial court erred in overruling his after-trial motion to set aside the verdict and judgment and to enter judgment for him, appellant points out that Jensen, having submitted only one theory of actionable negligence, has thereby abandoned all other charges of negligence pleaded or proved. Appellant is correct in his statement but it does not follow that we, therefore, must reverse this case outright. The court en banc last spoke in detail on this question in Smith v. St. Louis Public Service Co., Mo., 259 S.W.2d

692. It held "that no hard and fast rule may be written but that each case will be determined upon its own facts. However, where it appears (as here) that a counsel has committed his client's cause by choosing to restrict the submission to one issue because such appears to his strategic advantage in the trial of the case, the cause should not be remanded for new trial. * * * 'it is obvious a party should not always be granted a remanding of a cause for successive trials in order that he may experiment with different theories of his adversary's liability. The latter has some rights.'" 259 S.W.2d 696 [3]. In Smith, the court was of the opinion that the facts of that case had been fully developed and that plaintiff had abandoned his primary negligence assignments in order to secure the strategic advantage "of avoiding the hazard of meeting the defense of contributory negligence." Now in the instant case we can discover from the record no attempt by cross-claimant to obtain a strategic advantage by submitting "passing on a hill" rather than some other primary negligence. There may be a difference between choosing a "theory of recovery" in the sense of making a choice between primary negligence and humanitarian negligence as in Smith, supra, and as in Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, or in choosing between the F.E.L.A. and state workmen's compensation statutes as in Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 986 [2], 232 S. W.2d 547, 551 [2, 3], than in choosing to go to the jury on only one of a number of allegations of primary negligence. Be that as it may, however, in the instant case cross-claimant's counsel apparently believed that there was enough evidence adduced from which the jury reasonably could infer that Pace had passed Jensen on a hill where Pace's view ahead was obscured; or he may have believed that two separate specifications of negligence were submitted in the conjunctive. We have held to the contrary, but we are of the opinion that we may not say as a matter of law that cross-claimant may not recover by hypothesizing some more appropriate primary negligence. Under all the circumstances, we think this is a proper case in which to exercise our discretion, as limited by Smith, supra, to order a remand.

The judgment is reversed and the case remanded.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.