**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Wendell B. FIELDS, Administrator of the Estate of William B. Fields, Deceased, Lorraine Jones, Anna Mae Jones, Kathy Marlene Jones, Raymah L. Alkire, Defendants.**

**Civ. No. 1518.**

United States District Court,
W. D. Missouri,
St. Joseph Division.

Oct. 19, 1970.

Eugene Andereck, of Pickett, Andereck & Hauck, Trenton, Mo., for plaintiff.

L. E. Atherton, Milan, Mo., and Millett & Millett, Kingston, Mo., for defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW.

DUNCAN, Senior District Judge.

This action has been brought under the Declaratory Judgment Act, Title 28 §§ 2201 and 2202 U.S.C.A., on behalf of the plaintiff, an Illinois corporation, seeking to establish its non-liability under an alleged oral binder agreement to furnish liability insurance on an automobile owned by William B. Fields, a minor, now deceased. All of the defendants herein are residents of the State of Missouri and the amount in controversy exceeds the sum of $10,000.00.

The controversy here presented arises from an automobile accident occurring in Trenton, Grundy County, Missouri, in which the driver, William B. Fields and his two passengers Porter Jones and Michael Alkire were killed. Subsequent thereto heirs of the two passengers brought actions against the estate of William B. Fields in the Circuit Court of Sullivan County, Missouri. Thereafter, the administrator demanded that the State Farm Mutual Automobile Insurance Company defend all claims against the estate arising out of the accident.

State Farm then brought suit in this court seeking to establish that it is not obligated under any policy of insurance on the automobile of the deceased William B. Fields. The case was tried to the court without a jury on September 1, 1970.

On Saturday April 12, 1969, William B. Fields, a United States Marine home on furlough following service in Vietnam, purchased a 1969 Ford Mustang Mach I automobile, powered by a 428 cubic inch Cobra Jet engine and equipped with a four speed transmission. After arriving home with the new car his father, Wendell B. Fields, suggested that the boy purchase liability insurance before departing to show the automobile to his friends. Young Fields agreed and at approximately 8:30 o'clock that evening the father, in his son's presence, telephoned Eugene S. Crawford local agent for the plaintiff. Crawford was called because he had previously written a liability contract then in force insuring another automobile owned by the family.

Fields told Crawford that his son had just purchased a new car and that he wished to procure liability insurance on the vehicle. Fields further stated that his son had to borrow money to enable him to pay for the car and therefore the

cost of the insurance should be held down as much as possible.

Crawford then asked Fields what kind of boy his son was and what type of car he had purchased. The father replied that "Billy was a good boy" and that the car was a "little Mustang". Crawford requested, and was given, the boy's birth date and driver's license number, the serial number of the car, the number of cylinders in the engine, the model and the cost. Since the insurance premium was to be kept as low as possible Crawford recommended that the policy have a $100.00 deductible on the collision coverage.

Fields then requested the amount of the premium and Crawford replied that he thought it would be $180.00 to $190.00 for six months, but that he was uncertain of this amount since he was at home and his rate book was at his office. The parties agreed that Fields and his son would come to Crawford's office in Trenton on the following Tuesday, April 15, for the purpose of signing the insurance application and paying the premium. Crawford then assured Fields that his son would be covered from the time of the telephone conversation.

After arriving at his office on Monday morning April 14, 1969, Crawford prepared an application form in the name of "Bill Fields", upon which he entered the information that had been given him over the phone. Crawford testified that he listed the car as a '68 model on the form but that this was a mistake and that he knew it was a '69 model.

The application set forth liability limits of $10/20/10, with $500.00 medical payments, comprehensive coverage and a $100.00 deductible on the collision coverage. The numbers 10/20/10 designate $10,000.00 for payment of injury to one person with a maximum of $20,000.00 for all injuries arising out of the same accident and $10,000.00 property damage. Liability limits of $10/20/10 are the maximum written by Crawford's agency on single male drivers in the military service under the age of 21 years, and the minimum required by the Missouri Motor Vehicle Safety Responsibility Law, § 303.020(10), RSMo V.A.M.S. The application listed a premium due in the amount of $144.30.

On Tuesday morning, April 15, 1969, at approximately 10:30 o'clock, Fields and his son arrived at Crawford's office. At that time they were informed by someone sharing office space with Crawford but who was not associated with him that Crawford was not in and was not expected to return until that afternoon. Fields requested that the party leave a message for Crawford stating that he and his son were in and asking Crawford to call or to send a bill for the insurance.

Upon his return to the office Crawford received a note stating that Fields and his son were in and that they wanted Crawford to call them. Crawford testified that he attempted to call Fields "2 or 3 times" during the remainder of the week but that he was unable to reach anyone at the Fields home.

Early Sunday morning, April 20, 1969, the Mustang automobile, occupied by young Fields, Jones and Alkire, was involved in an accident resulting in the death of all three. On the following Thursday Mrs. Beverly Fields, stepmother of the deceased William B. Fields, went to Crawford's office and attempted to pay the insurance premium. This offer of payment was refused by Crawford.

In its brief plaintiff argues that there was no "meeting of the minds of the parties concerning all of the elements necessary to establish an oral contract of insurance". In Missouri it appears that five essential elements must be agreed upon before a valid automobile insurance binder becomes effective. Those elements are (1) the subject matter, (2) the risk insured against, (3) the duration of the risk, (4) the amount of the coverage, and (5) the amount of the premium. Chailland v. M. F. A. Mutual Insurance Co., Mo., 375 S.W.2d 78. It is not essential that all of the elements be expressly agreed upon if the intention of the parties can be gathered from the

**1138**

case. American Sur. Co. of N. Y. v. Williford, 8 Cir., 243 F.2d 494.

■ The plaintiff contends that agent Crawford was misled either "inadvertently or otherwise" concerning the description of the Mustang automobile. We are unable to find any misrepresentation on the part of Mr. Fields in describing the subject matter of the contract. Crawford was an experienced automobile insurance agent, if he desired more detailed information concerning the car he could have requested such information before binding the coverage. The facts clearly show that Crawford agreed to insure the 1969 Mustang automobile purchased by William B. Fields on April 12, 1969, and that the minds of the parties met on this element.

Plaintiff further argues that the minds of the parties did not meet on the limits of liability of the insurance contract. There exists a material variance in the testimony relating to this fact. Mr. and Mrs. Fields and two of their employees testified that Fields specifically mentioned to Crawford that the insurance was to be in the same amount as that in effect on his wife's car, that is, 25/50/25. We are inclined, however, to give greater weight to Crawford's testimony to the effect that the parties agreed upon the lowest cost insurance available, the maximum amount written by Crawford's agency on single male drivers in the military service under 21 years of age, and the minimum amount required by the Missouri Safety Responsibility Law.

In view of Crawford's uncontradicted testimony that his agency did not write policies for amounts in excess of 10/20/10 it is difficult for us to believe that he would have made an exception in this case. This is borne out by the fact that Crawford wrote out the application for 10/20/10 on Monday following the Saturday evening telephone conversation. It is our conclusion that the minds of the parties met on liability limits of 10/20/10.

The only remaining element requiring discussion is that of the duration of the risk. There exists no dispute as to the fact that if the policy had been issued it would have been for a term of six months. There is, however, some dispute as to the duration of the oral agreement binding the coverage. Testimony relating to this fact is as follows:

*Agent Crawford's testimony on direct examination:*

"

Q What was his response to that?

A He [Fields] said, 'would he [the son] be covered as of now?' I said, yes he would be covered right now and I said I am home, you can stop here at home if you happen to be coming by and he said, Gene, can you wait—it would be Tuesday, maybe, would that be all right. I said yes that would be all right."

*Agent Crawford's testimony on cross examination:*

"

Q Did you tell him [Mr. Mulnick a State Farm adjuster] that you had already bound this insurance?

A I told him it would have been covered on Monday or Tuesday, but he didn't come in.

Q But you told him you had bound this insurance?

A You mean the adjuster?

Q Yes.

A He [Fields] told me he would be there on Monday or Tuesday and I said yes that would be fair enough."

*Wendell B. Fields' testimony on direct examination:*

"

A * * * I asked him if he knew how much it was and he said no he didn't have his rate book with him, it was at the office. Oh, I told him Billy was coming over that night and he said, no he didn't have his rate book with him, it was at the office and I asked him if he had any idea how much it would be, he said oh, I expect about $190.00. I told him then that we would be over around the

first of the week—that I had to go to, that we had to go to Chillicothe to get the deed to the car and to make out a note, he had given a check on a Chillicothe bank for the car which we had already made arrangements for, it was all right with the bank, and we had to go down and and make a note for the money, and that, and that I would be in around the first of the week intending to go Tuesday, which I did.

\* \* \* \* \* \*

Q Now what was your conversation with Mr. Crawford about when you were going to go up to Trenton, I mean, yes to Trenton to see him?

A What was that again?

Q I say what was your conversation with Mr. Crawford as to when you were to see Mr. Crawford?

A Well I told him I would see him around the first of the week because I intended to go Tuesday and make one trip and do it all.

Q What did he say to that?

A He said all right or o. k., something to that effect, I am not sure of the exact—

Q Was there anything else said about the insurance said that night that you recall when you were talking as to when—

A No, I don't recall anything.

Q —the coverage would be effective, was there anything said about that?

A Well, yes, he said it would be 'then' and the last words I remember that I did say to him over the phone, I said, now Gene this insurance is effective immediately, and the words he said was 'as of this minute'."

From the direct testimony of both Crawford and Fields we must conclude that the oral binder agreement was to continue in effect for a reasonable time until the formal application could be signed and the premium paid. Fields and his son came to Crawford's office on Tuesday as they said they would, but Crawford was unavailable. They left word for the agent to call them. Craw-

ford never at any time informed Fields or his son that the oral binder agreement would expire on Monday or Tuesday, nor did he ever notify them that the insurance coverage had expired.

The only testimony to the effect that the oral binder would expire at the first of the week is that of Crawford relating to what he had told a State Farm adjuster some days after the accident. We must assume that this was merely a legal conclusion on Crawford's part since no such limitation was ever mentioned by the parties in the making of the oral contract.

It is our conclusion that all of the elements essential to the making of a contract of insurance were agreed upon by the parties, and that the oral binder agreement insuring the 1969 Mustang automobile was in effect at the time of the accident.

Plaintiff contends that even if the minds of the parties met on all of the essential elements no valid contract of insurance ever existed for the reason that Wendell B. Fields was acting as the agent of his minor son in procuring the insurance. In its brief plaintiff states that the "rules governing minors, deny the minors the right to appoint agents or even to ratify such appointments after they become of age." As authority for this proposition it cites, Bell v. Green, Mo., 423 S.W.2d 724, and Curtis v. Alexander, Mo., 257 S.W. 432.

We do not consider the above cited authorities controlling on the issues now before us. At the time the oral binder agreement was entered into young Fields was over 20 years and 10 months old, he was a member of the Armed services, and the owner of an automobile which was to be licensed and operated in the State of Missouri.

Missouri law requires owners and operators of motor vehicles to possess liability insurance or to have the ability to post a cash bond in case of an accident. § 303.010 et seq., RSMo V.A. M.S. All of these facts were clearly evident to plaintiff's agent at the time he bound the insurance coverage. We do

not believe that after a loss has occurred the plaintiff can avoid liability under its contract by asserting that it dealt with the agent of a minor, that the agent's appointment was absolutely void, and that therefore, the entire transaction is a nullity.

For the foregoing reasons it is the conclusion of the court that at the time of the accident the plaintiff had in force a contract of liability insurance, in the amounts set forth in the application prepared by agent Crawford, insuring the 1969 Ford Mustang automobile owned by William B. Fields.