13 So.2d 172

**WOODSON v. HARE et al.**

6 Div. 971–975.

Supreme Court of Alabama.

Feb. 18, 1943.

Rehearing Denied May 13, 1943.

302

J. P. Mudd, of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith and Mark L. Taliaferro, all of Birmingham, for appellees.

LIVINGSTON, Justice.

Five suits arising out of a collision of automobiles were consolidated and tried in the Jefferson Circuit Court under and by virtue of the provisions of the Act approved September 13, 1935, General Acts 1935, page 1010, Code 1940, Tit. 7, § 221; Tit. 62, §§ 221–227. The plaintiffs in the five suits consolidated are: Mrs. Tom Hare, Tom Hare, F. G. Rinnert, individually and as administrator of the estate of Fannie Houston Rinnert, deceased, who was killed in the collision, and Ann Rinnert.

Each suit was commenced against four defendants, Carol Watt, Lucius Colmant, Robert Gunn and Virginia Woodson, all minors over fourteen years of age. Robert Gunn was stricken as a party defendant, and the trials proceeded against the three remaining defendants. The jury, in each case, returned a verdict in favor of the defendant Carol Watt, but against defendants Lucius Colmant and Virginia Woodson. Virginia Woodson alone appealed.

The plaintiffs in each suit, rested their case on two counts, A and B. Count A was the same in each suit with the exception of the amount of damages claimed. Count B in each suit was the same except as to the amount of damages claimed.

Counts A and B were predicated upon negligence as a basis for recovery. Insofar as the defendant, Virginia Woodson, the only appellant here, is concerned, the only practical difference between counts A and B is that count A charges, among other things, that Virginia Woodson "operated an automobile upon and along said highway so negligently" and count B charges that one "Robert Gunn" operated an automobile upon and along the highway so negligently as to cause a collision, and that Robert Gunn "was at the time acting within the line and scope of his authority as agent of the defendant, Virginia Woodson."

The theory of plaintiff's case in each suit is that the defendants, Carol Watt, Lucius Colmant, Robert Gunn or Virginia Woodson, according to the different tendencies of the evidence, were driving separate automobiles along a public highway in Jefferson County, known as the Birmingham-Anniston Highway, at a point just outside the limits of the city of Birmingham, and that defendants operated said automobiles so negligently as to cause one or more of them to collide with the automobile in which Mrs. Tom Hare, Fannie H. Rinnert and Ann Rinnert were riding, and as a proximate consequence thereof, caused the death of Fannie H. Rinnert, and the injuries and damages to the other plaintiffs.

To a clear understanding of the issues involved, we state the tendency of a part of plaintiffs' evidence. On the afternoon of August 21, 1940, three automobiles were traveling in a line, one behind the other, in a westwardly direction, approaching the city limits of Birmingham along the public highway known as the Birmingham-Anniston Highway. The plaintiffs, Mrs. Tom Hare, Ann Rinnert and Fannie H. Rinnert, who was killed in the collision and whose administrator is one of the plaintiffs, were riding in a Ford automobile, moving in the opposite direction, that is, eastwardly, along the same highway in the direction of Leeds, Alabama. The three automobiles proceeding towards Birmingham were, in the order of their travel, as follows, a Buick car driven by defendant Carol Watt, a minor, a Dodge car, driven by defendant

Lucius Colmant, a minor, and which was traveling a short distance behind the Buick car. The third car in line at the time of the collision was a Chrysler car belonging to Mrs. Paul Lee Woodson, the mother of the defendant Virginia Woodson. The tendencies of the evidence are conflicting as to whether Virginia Woodson or Robert Gunn was driving the Chrysler car at the time of the collision.

As the three aforementioned cars approached the place of the collision, the Dodge car veered or swerved on to the right shoulder of the road, considering the direction in which it was going, and immediately afterwards swerved or cut sharply to the left across the highway and into the path of the Ford car in which Mrs. Hare, Ann Rinnert and Fannie H. Rinnert, now deceased, were riding. The Ford car ran into or against the Dodge car; and the Chrysler, driven either by Robert Gunn or Virginia Woodson, ran into or against the Dodge car, and was thrown into or against the Ford car, contributing to the death of Fannie H. Rinnert, and injuries to the other occupants of the Ford car. Immediately prior to the collision, the Buick car reduced its speed and the Dodge car struck or scraped the rear bumper of the Buick. The speed of all three cars was approximately fifty to sixty miles per hour at or near the time of the collision. All occupants of the three cars were minors.

The important questions presented for determination by this record are stated by appellant, as follows: "The position of the defendant, Virginia Woodson, is, first, that there can be no valid bailment of the automobile as to her, because the bailment rests upon a contract, and Virginia Woodson, being a minor, as shown by both the pleadings and evidence, could not make a binding contract of bailment; and, second, that the relationship of master and servant between Virginia Woodson and Robert Gunn would necessarily rest, if it existed, upon a contract of agency (master and servant), and Virginia Woodson could make no contract of agency that would bind her."

The questions are presented by demurrers to count B, refused charges and exceptions to portions of the trial court's oral charge.

We do not agree with appellant's first insistence. An actual contract or one implied in fact is not always necessary to create a bailment. Where, otherwise than

by mutual contract of bailment, one person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he ought, upon principles of justice, to keep it safely and restore it or deliver it to the owner, such person and the owner of the property are, by operation of law, generally treated as bailee and bailor under a contract of bailment, irrespective of whether or not there has been any mutual assent, expressed or implied, to such relationship. Cotton v. Harris Transfer & W. Co., 21 Ala.App. 136, 106 So. 220, certiorari denied 214 Ala. 6, 106 So. 223; 6 Am.Jur. p. 209, section 86.

■ A constructive bailment arises where a person having possession of a chattel holds it under such circumstances that the law imposes upon him the obligation to deliver it to another. And where the bailment may be classified as a constructive bailment, the general rule of quasi contracts, that the rights, duties and obligations of the relationship, since they are imposed by law, may be imposed on persons who have no capacity to assent to an ordinary contract, applies. 6 Am.Jur. page 193, section 66, page 204, section 76. See, also, 13 Corpus Juris page 244, § 10; 17 C.J.S., Contracts, § 6. Moreover, the question as to whether or not the relation of bailee and bailor existed between appellant and her mother, the owner of the Chrysler car, is of no importance here because the mother's interests are in no wise involved in the present litigation.

The second insistence is to be determined on whether or not the negligence of the driver of the Chrysler car, adopting the tendency of the evidence indicating that Robert Gunn was driving, may be imputed to the minor defendant Virginia Woodson, and whether or not it is essential that a technical agency be established and proven on the part of the driver.

The pleading phase of the question was urged by appellant, independently of the contention that defendant could not be liable under the facts, as a matter of law. This phase of the question we will treat later in the course of the opinion.

Appellant's liability in this case is not based upon the strict doctrine of master and servant, or principal and agent, but upon the doctrine of imputed negligence which arises from the presence of the permissive user, the appellant, in the automobile at the time of the collision, which, although it was not being driven by her servant, was being driven with her permission and in her business, or in a joint enterprise of such permissive user and the driver.

■ Where a permissive user of an automobile occupies the car at the time of the collision, she is liable for the negligence of the driver if (1) she has not abandoned her right to control the car, or (2) if she exercises or has a right to exercise any control over the driver or the operation of the car, or (3) if the ride is for her benefit or for the mutual benefit of herself and the driver. This rule is set forth in Blashfield's Cyclopedia of Automobile Law and Practice, 1935, Permanent Edition, vol. 5, pages 66 to 70, § 2930, as follows:

"By the weight of authority, the owner of a motor vehicle, present therein at the time of an accident caused by its negligent operation, is liable for injuries resulting though he is not personally at the wheel; the car being driven by one not his servant, but with his permission and in the business of the owner or in a joint enterprise of the owner and the driver.

"Where an owner is riding in an automobile which is being driven by another in an improper manner, and the evidence does not show a contractual surrender nor an abandonment of the owner's right to control, the inference is warranted that the owner knew of and permitted the improper operation and he is deemed to have consented to the negligent operation of the machine and the driver's negligence is imputed to him; and if an owner permits some other person to operate his car in which he is riding, whether his wife, child or a friend, retaining such control of the car as gives him unrestricted right of direction and control, he will be liable for the driver's negligence."

■ Obviously, there was sufficient evidence in the record to justify liability on the part of appellant strictly in accordance with the doctrine outlined above.

The evidence disclosed that appellant had driven her mother's car, occupied by four other minors, out to a dairy near Birmingham for the purpose of observing the process of electrical milking.

Roger Collier testified, in part, as follows:

"I am eighteen years old. * * * I had gone out to the dairy with Virginia Woodson, * * * Carol Watt in another car went along with us. * * *

"I walked down to Hagain's Drug Store. I was sitting in Virginia Woodson's car when Carol Watt drove up. Carol and Virginia were cousins. I know Elizabeth Woodson. She was in Carol's car, and I got in just to talk with them. Then we all together with the folks in the Watt car decided we would go out and see them milk the cows. I had been out there several times, not especially to see them milk the cows, just to go out there for a ride. It is a nice place on a nice highway, about three or four miles out. I believe the others agreed with the people in the Watt car that we would all drive out there. I didn't get out and talk to them. We were all talking to them at Hagan's Drug Store, to the best of my remembrance. We were parked behind them at Hagan's Drug Store. Then Virginia Woodson drove on out to the dairy. At the dairy Bob Gunn wanted to drive, and so did Tony Smallwood. I don't know why, but they just wanted to drive. I guess they were nervous. I don't think Virginia had been driving very long, so I said, 'Let Bob drive.' And Bob drove from there. Virginia got in the back. Tony Smallwood was in the back with her. There were five people in our car. There were four in the Watt car. I knew them all at that time. I cannot give any conversation concerning the exchange of drivers other than that I have already given. Bob Gunn liked to drive a car, and he just asked Virginia Woodson if he could drive and she let him drive. There was nothing further said concerning where we were going when we left there. We were just going back in the direction of home. Virginia Woodson lives about a block and a half from Hagan's Drug Store. There was nothing said concerning the manner or method of driving the automobile, that I know of, from the time we left the dairy until we got to the scene of the accident."

Appellant testified, in part, as follows: "I was in my mother's car. I just asked her if I could have it for a while and she let me have the car. * * * I had turned the car over to Bob Gunn. I don't remember Tony Smallwood asking to drive it. I remember that Bob asked me to let him drive it. I had driven from Hagan's Drug Store over to the dairy. Then I got out and took a seat in the back of the car. Tony Smallwood was seated back there with me at the time. I did not undertake to say anything to Bob Gunn about how to drive or what to do, or direct or control him in any way. He did all of the driving from the dairy. I did not undertake to direct him or say anything to him in any way, shape or form."

The question then arises as to whether or not the fact that appellant, Virginia Woodson, is a minor, relieves her of liability under the facts and circumstances of this case.

The principle determinative of the case before us was likewise before the Pennsylvania court in the case of Feagles v. Sullivan, 32 Pa.Dist. & Co. R. 47, and the Appellate Court of Illinois, Fourth District, in the case of Palmer v. Miller, 310 Ill.App. 582, 35 N.E.2d 104. The courts in both of the cases mentioned made reference to the Restatement of the Law prepared by the American Law Institute.

In such Restatement of the Law, supra, on the subject of agency (section 20–c) is found the following statement: "Thus, infants and persons lacking full capacity because of mental defects are affected by acts done on their account by a person whom they direct so to act, to the extent to which they have capacity to give consent and become parties to the transaction."

In the Feagles case, supra, such comment was cited in support of the conclusion of the court, as well as certain comments appearing in the Tort section of American Law Institute Restatement of the Law, which was quoted in support of the imputed negligence theory and followed by analogy in such case. In the Feagles case a minor, who had borrowed his father's automobile for a pleasure ride and who had permitted a friend to drive, was held liable to a third person when the friend negligently struck the other automobile, and the minor, at the time of the accident, was sitting beside the friend. The court stated specifically that a minor has capacity to appoint another to drive the minor's automobile, and the minor is liable when the driver negligently causes an accident.

Appellant contends that the following cases militate against such conclusion and support the principle contended for by her that the negligence of the driver could not, under the facts in the instant case, be imputed to the minor appellant: Gott v. Scott, La.App., 199 So. 460; Burns v. Smith, 29 Ind.App. 181, 64 N.E. 94, 94 Am. St.Rep. 268; Robbins v. Mount, 27 N.Y. Super.Ct. 553, 4 Rob. 553, 33 How.Prac. 24, 34; Wilcox v. Wunderlich, 73 Utah 1, 272 P. 207; Covault v. Nevitt, 157 Wis. 113,

146 N.W. 1115, 51 L.R.A.,N.S., 1092, Ann. Cas. 1916A, 959; Brown v. Wood, 293 Mich. 148, 291 N.W. 255, 127 A.L.R. 1436.

In Gott v. Scott, supra, the Louisiana court denied liability on the part of Mildred Scott, a minor, who was riding on the back seat of her automobile at the time of the accident. But the evidence showed that the car was being used on a mission solely the business or pleasure of the driver. The decision was also influenced by the Louisiana statute.

In the case of Burns v. Smith, supra, a minor's liability was denied under the facts of the case, but the court emphasized the fact that tortious acts for which the minor could be made responsible were those committed by himself or under his immediate inspection or direction.

The facts in the case of Brown v. Wood, supra, are entirely different from the facts in the instant case, and that decision has little or no persuasive influence on the question here considered.

The case of Covault v. Nevitt, supra, is rested upon the doctrine of respondeat superior, and the facts refute any application of the theory of imputed negligence.

Appellant also cites Fernandez v. Lewis, Tex.Civ.App., 92 S.W.2d 305, which appears to support her insistence, as does the case of Wilcox v. Wunderlich, supra. However, in the latter case the doctrine of imputed negligence seems not to have been considered.

We are clear to the conclusion that the doctrine of imputed negligence applies to a minor in charge of an automobile or vehicle, with the right and authority to direct the driver in the manner of its operation.

While some of the cases have considered the question of the imputation of contributory negligence to the minor, they are equally applicable to the question of the imputation of negligence generally to the minor for the purpose of fixing liability. See, McKerall v. St. Louis-San Francisco R. Co., Mo.App., 257 S.W. 166; Atchison, etc., R. Co. v. McNulty, 8 Cir., 285 F. 97, certiorari denied 262 U.S. 746, 43 S.Ct. 521, 67 L.Ed. 1212.

Appellant further insists that the trial court committed reversible error in overruling her demurrers to count B of the complaint in each case tried. Counts B, the here material parts of which are hereinabove set forth, show that defendant,

Virginia Woodson, is a minor over the age of fourteen years.

But it appears to us that the consolidated cases were tried on the theory of imputed negligence. The portions of the evidence of appellant, Virginia Woodson, and the witness Roger Collier, hereinabove set out, and that of other witnesses, clearly indicated that defendant and her witness were examined with that theory in mind.

As indicative of the trial court's mind on the subject, we quote the following excerpt from his oral charge to the jury, and to which objection was made and exception reserved by appellant: "There is one count of this complaint, gentlemen, that relies upon the agency insofar as one of the defendants is concerned. The court charges you, without expressing any opinion at all about what the truth of the matter is, but the court gives you the law as this: That if a person has turned over to him an automobile and the care and the custody of that automobile, and is allowed to take it away under those circumstances and conditions, he then becomes what the law determines a bailee of that car, having the car in his possession and under his control and having the power to control it. If that be true * * * and on that the court expresses no opinions about the facts in this case * * * but if that be true then in such case the law says that if that person remains in that automobile and allows another to drive it while that person is in the automobile and retains the power to direct the driver, whether that power is ever used or not it makes no difference, but if that person retains the power to direct how it shall be operated and driven then the law says in such case that the bailee, that is the person to whom the car was turned over and who took it away and who had the power and control over it, that the bailee of that car occupies the relationship of principal and the one who is driving the car with the bailee in there, with the bailee having the power to control how it shall be driven, occupies the relano opinion about the facts in this case at tionship of agent. The court expresses all, but gives you, gentlemen, that about the matter of law concerning what the law is in that case."

█ As we have indicated, the minor present in the car may be held liable for the negligence of the driver whom she has appointed, upon the doctrine of imputed negligence. In such case, the driver is the alter ego of the minor: Clearly, an

agent in law. Thomas v. Carter, 218 Ala. 55, 117 So. 634.

No ground of demurrer specifically points out any defect in counts B in failing to allege the presence of the minor, Virginia Woodson, in the car. An agency is shown out of which liability could be fastened upon the minor. The grounds of demurrer are too general in character; and no error to reverse appears in the act of the court in overruling the demurrers to counts B. Moreover, the evidence discloses, without dispute, the presence of the minor in the car, and in no event could injury result to her in overruling the demurrers. Supreme Court Rule 45, Code 1940, Tit 7, Appendix.

We are of the opinion, and hold, that there is no reversible error in the record, and all of the cases are due to be and are affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN, FOSTER, and LAWSON, JJ., concur.