Edith Joyce SHAFER, Administratrix of the Estate of Henry Raymond Shafer, Deceased, Appellant-Respondent,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Appellant,

and

American Telephone and Telegraph Company, a Corporation, Respondent.

No. 45016.

Supreme Court of Missouri.

Division No. 2.

Nov. 12, 1956.

Glennon T. Moran, St. Louis, George J. Moran, Moran & Beatty, Granite City, Ill., of counsel, for plaintiff-appellant.

John S. Divilbiss, John Mohler, Donald H. Sharp, St. Louis, for appellant, Southwestern Bell Tel. Co.

Dearing & Richeson, Will B. Dearing, Hillsboro, for respondent American Tel. & Tel. Co.

STOCKARD, Commissioner.

On the 14th day of July, 1952, Henry Raymond Shafer, then twenty-two years of age, met his death by electrocution. At the time he was an employee of Western Electric Company, a contractor engaged by Southwestern Bell Telephone Company (hereafter referred to as "Bell"), and was working in the Beaumont exchange building in St. Louis, Missouri.

This suit for wrongful death was brought against Bell and also against American Telephone and Telegraph Company (hereafter referred to as "A. T. & T."). Plaintiff invoked the res ipsa loquitur doctrine.

The principal allegation in the petition as to liability was that the defendants "negligently and carelessly suffered, allowed and permitted the said Henry Raymond Shafer to become electrocuted by coming into bodily contact with said telephone equipment, and as a direct result thereof the said Henry Raymond Shafer died." The jury returned a verdict in favor of plaintiff and against Bell in the amount of $15,000, but the verdict was against plaintiff and in favor of A. T. & T. Bell has appealed from the judgment against it, and plaintiff has appealed from the judgment in favor of A. T. & T.

Bell contends that the trial court erred in overruling its motion for a directed verdict and that plaintiff's verdict-directing instructions were erroneous. The substance of these contentions is that plaintiff failed to make a submissible case under the res ipsa loquitur doctrine.

In a res ipsa loquitur case the plaintiff has the burden of proving each factual ingredient necessary for a prima facie case including the burden of establishing that defendant was negligent. McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557 [3], 92 A.L.R. 641; Frazier v. Ford Motor Co., Mo.Sup., 276 S.W.2d 95 [3]. However, in determining the sufficiency of the evidence to sustain the trial court's judgment for plaintiff and against Bell we must consider plaintiff's evidence as true, and also Bell's evidence wherein it aids plaintiff's case, and give plaintiff the benefit of every legitimate inference. Caswell v. St. Louis Public Service Co., Mo.Sup., 262 S.W.2d 40 [1]. "A factor bearing on the quantum of proof to make a submissible res ipsa case on defendant's negligence is the duty owed the plaintiff [in this case Shafer] by the defendant." Frazier v. Ford Motor Co., supra [276 S.W.2d 99].

On the night of his death Shafer had been instructed by his foreman to perform the uncomplicated job of lacing telephone cable in the key indicator room of the Beau-

mont exchange building owned by Bell. The telephone cables were on a rack near the ceiling of the room about 14 feet above the floor. Shafer used a wooden stepladder to reach them. Nearby was a fuse panel owned by Bell extending from the floor to the ceiling which contained fuses for individual telephone circuits. About 15 inches in front of the fuse panel and attached to the ceiling was a fluorescent light fixture with a metal shade which was properly grounded. Near the floor the circuits in the fuse panel carried direct current of 24 and 48 volts, and beginning about ten feet above the floor the circuits carried direct current of 130 volts. There was nothing about Shafer's work which required him to contact the fuse panel or any other equipment carrying electricity. All fuses on the panel would give an electrical shock to one touching them who was "grounded," the severity of the shock depending on the voltage and the effectiveness of the contacts made with the fuses and the "ground." The night of July 14, 1952, was warm, and a sweaty condition causes one to be more susceptible to electric shock in the event of a contact with an electrically charged wire or appliance because sweat is a good conductor of electricity.

There were no witnesses to the occurrence which resulted in the death of Shafer. About ten minutes before he was electrocuted a fellow employee of Western Electric Company spoke to him while he was at the top of the ladder. A short time later another employee heard a moan and the sound of someone falling. Shafer was found on the floor at the bottom of the ladder. First aid was administered but he died before reaching the hospital.

The chief pathologist for the coroner testified that Shafer had three traverse burns on his right shoulder, a superficial laceration of the outer surface of the right foot, a subcutaneous and intradermal hemorrhage over the left scapula, and burns superficially along the right arm near the shoulder. He diagnosed the cause of death as electrocution. Based upon his examination he was of the opinion that the electric current probably entered Shafer's body at the right shoulder and that the point of exit was in the region of the left scapula.

While Shafer was still on the floor receiving first aid an employee of Bell received a call that something was wrong in the key indicator room. Upon arriving there he found a yellow light burning which indicated "fuse alarm trouble." A number of fuses in the 130-volt area of the panel were "smashed and pushed to one side." He straightened those he could and replaced the others. In doing this he touched the bare fuses without ill effect, but he was not grounded. No other trouble of any kind was located and no improperly functioning equipment was found. The following morning tests were made, and it was found that the potential between the fuses in the upper portion of the panel and the grounded shade of the fluorescent light fixture was exactly 130 volts, and no unusual or abnormal condition was found.

In general the res ipsa loquitur doctrine does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641. It is admitted that the fuse panel was under the management and control of Bell. Neither plaintiff nor Bell have much knowledge as to the cause of the occurrence in this case, but we are of the opinion that for the purpose of the res ipsa loquitur doctrine Bell possessed superior means of information as to the cause. This leaves only the question of whether condition "(a)" above is met.

Notwithstanding statements in a few cases indicating the contrary, plaintiff in a res ipsa loquitur case is not required to present evidence overthrowing every reasonable theory of nonliability on the part of the defendant, Warner v. Terminal Railroad Association of St. Louis, 363 Mo. 1082, 257 S.W.2d 75 [3]; and to invoke the doctrine it is not requisite that plaintiff's case be such as to exclude every hypothesis but that of defendant's negligence. Cruce v. Gulf, Mobile & Ohio Railroad Co., 358 Mo. 589, 216 S.W.2d 78 [4]. However, the attendant facts must raise a reasonable inference of defendant's negligence. Maxie v. Gulf, Mobile & Ohio Railroad Co., 358 Mo. 1100, 219 S.W.2d 322 [5], 10 A.L.R.2d 1273. The doctrine cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances from which negligence may be inferred are not proved but must themselves be presumed. Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13 [3]; Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, 512.

Plaintiff's announced theory was that ordinarily 130 volts "would not be harmful and decedent was killed by an excessive amount of electric current." However, not only does the evidence not support this, plaintiff's evidence establishes the contrary. The electric current at the fuse panel was direct current (commonly referred to as "DC") and was supplied to the panel from batteries owned and maintained by A. T. & T. and located in the basement of the building. Plaintiff's position is that 130 volts DC are not ordinarily fatal to one coming into contact therewith, and, therefore, the fuse panel necessarily had to have an excessive amount of electric current because Shafer was killed by the electric charge. Plaintiff places considerable reliance on the testimony of her witness, who was the head repairman of Bell, who testified that he always had been of the opinion that "130 volt DC potential was not hazardous." But he qualified this by saying that this was based "on personal experience," and when asked if "for one to be killed, it would be necessary that many more than 130 volts would have been up there at the time," he answered: "I have no way of knowing, since a number of things would enter into it, chiefly the points of contact, or the path of current through the body—in my opinion." This testimony does not tend to support a conclusion either way, but plaintiff's witness, Dr. John J. Conner, chief pathologist of the coroner's office, testified that he had examined other electrocution cases where people had come into contact with 130 volts or less, and he then stated unequivocally that 130 volts or even less under proper conditions can cause death. In order for the jury to find that there was more than 130 volts on the fuse panel it would first have to find, contrary to the evidence of the plaintiff and with no evidence to the contrary, that 130 volts would not kill a person who came into contact therewith, and then infer that there was present more than 130 volts because Shafer was killed.

The facts, and the reasonable inferences therefrom, most favorable to plaintiff and which are supported by the evidence are that Shafer was on a stepladder engaged in lacing telephone cable in an area nearby to exposed fuses which had a potential of 130 volts DC, and which under proper conditions can kill a person coming in contact therewith; while so engaged in lacing cable, in some unexplained manner and for some unknown reason, he came into contact with the exposed fuses, as evidenced by the fact that some were "smashed and pushed over"; while in contact with the fuses he was or became in contact with something providing a "ground" (presumably the grounded metal shade of the fluorescent light); and as a result thereof 130 volts DC passed through his body from the fuses to whatever served as the "ground" and this electric charge was capable of and did cause his death.

The crucial element of the res ipsa loquitur doctrine material here is the hap-

pening of an occurrence, which in itself and without explanation, speaks for itself of negligence. The occurrence or "thing" which speaks of negligence (see Shain, Res Ipsa Loquitur, Presumption and Burden of Proof) is not the injury nor the act or omission of the defendant, nor is it the instrumentality. It is the unusual occurrence of the instrumentality in the causal chain of events which connects the injury to the act or omission of the defendant. For example, in Gordon v. Muehling Packing Company, 328 Mo. 123, 40 S.W.2d 693, it was not the sausage machine but the malfunctioning of the machine in starting when the electric switch was turned off that was the occurrence or "thing" which spoke of negligence; in Frazier v. Ford Motor Co., Mo.Sup., 276 S.W.2d 95, it was not the conveyor but the sudden stopping of the conveyor momentarily followed immediately by the violent and sudden forward lunge that was the occurrence or "thing" which spoke of negligence; in Warner v. Terminal Railroad Association of St. Louis, supra, it was not the elevator but the sudden and unexplained descent of the elevator that was the occurrence or "thing" which spoke of negligence; and in Glasco Electric Co. v. Union Electric Light & Power Co., 332 Mo. 1079, 61 S.W.2d 955, it was not the presence of electricity on the wires but the electrical arc where it was supposed not to be and the explosion under a manhole covering a service box that was the occurrence or "thing" which spoke of negligence. We find no case, and none has been cited to us, in which it was held that a submissible case was made under the res ipsa loquitur doctrine without evidence that the instrumentality under the control of the defendant which caused the injury functioned improperly, acted in an unexpected way or manner, or acted in an extraordinary manner which would not have occurred if there had not been negligence. It is this improper, unexpected or extraordinary happening that constitutes the "occurrence" referred to in McCloskey v.

Koplar, supra, and the "thing" referred to by Shain which speaks of negligence and provides the causal connection between the injury received and the act or omission of defendant.

■ Plaintiff contends the unusual occurrence in this case was that Shafer was shocked and killed, but the mere fact, and nothing more, that a person was injured is not sufficient to bring the res ipsa loquitur doctrine into action. Noce v. St. Louis-San Francisco Railway Co., 337 Mo. 689, 85 S.W. 2d 637, 641; Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13 [3]; State ex rel. Missouri Public Utilities Co. v. Cox, 298 Mo. 427, 250 S.W. 551, 553; Pointer v. Mountain Railway Construction Company, 269 Mo. 104, 189 S.W. 805 [3], L.R.A. 1917B, 1091; Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S.W.2d 240 [3], 117 A.L.R. 1414; Shain, Res Ipsa Loquitur, Presumption and Burden of Proof, p. 5; 65 C.J.S., Negligence, § 220(8).

■ In this case the fuse panel, the instrumentality causing the injury, did not operate in an unusual or unexpected way. There was no movement or operation contrary to its usual, normal and expected operation. It is true that when Shafer came in contact with the fuses he was shocked because the fuse panel had 130 volt potential, but it was supposed to have a 130 volt potential, and plaintiff's evidence shows that 130 volts can kill a person coming into contact therewith which is what happened in this case. In Pauley v. Baltimore & Ohio R. Co., Mo.App., 215 S.W.2d 78, 82, it was stated that the physical cause of the plaintiff's injury was the starting of the air tamper when the valve was set for normal operation. The court then stated: "In operating with the valve turned on, the tamper performed exactly as it was supposed to do. There was no unexpected and automatic action of the machine at a time when it should have remained at rest, * * *. There was no proof that the machine made an extraor-

dinary movement, * * *. There was, therefore, a failure of proof of one of the elements relied upon by respondent as the basis for invoking the doctrine of res ipsa loquitur, and the Court erred in submitting the case to the jury on that theory." The attendant facts in this case are not such to invoke the res ipsa loquitur doctrine, and the trial court erred in submitting the case to the jury on that theory.

■ Bell also contends that it was entitled to a directed verdict because the evidence established that Shafer was an employee of an independent contractor doing work under contract on Bell's premises in the usual course of Bell's telephone business within the meaning of Section 287.040 RSMo 1949, V.A.M.S. The record shows that workmen's compensation benefits by reason of the death of Shafer have been paid by Western Electric Company. We shall not set out the terms of the statute, but the essential elements necessary to establish that Shafer was a "statutory employee" are that the work was being done under contract on Bell's premises, and that it was "an operation of the usual business" which Bell there carries on. Baker v. Iowa-Missouri Walnut Log Co., Inc., Mo. App., 270 S.W.2d 73 [2]; Snethen v. American Compressed Steel, Inc., Mo.App., 272 S.W.2d 850, 854; Grauf v. City of Salem, Mo.App., 283 S.W.2d 14 [2]. If Shafer was a "statutory employee" of Bell pursuant to Section 287.040 then plaintiff is not entitled to recover in this case. Section 287.120 RSMo 1949, V.A.M.S.; Wors v. Tarlton, 234 Mo.App. 1173, 95 S.W.2d 1199; Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153.

The work of Shafer was being done on Bell's premises. Although it is clear that Shafer was an employee of Western Electric Company which frequently does work under contract for Bell, the evidence does not disclose the work, of which cable lacing apparently was a part, to be done by Western Electric Company under the contract. We cannot determine that the work being done under contract by Western Electric Company, as distinguished from the specific act being done by Shafer, was an operation of the usual business carried on by Bell on the premises.

■ Bell, in effect, contends that Shafer was lacing cable, that the evidence shows that Bell employees frequently lace cable, and therefore Shafer's work was an operation of the usual business which is carried on by Bell on the premises. We do not believe, at least in this case, that this is the proper test. For example, assuming that Bell employees frequently and normally solder wire connections, we doubt that the employees of a contractor engaged by Bell to install an electrical burglar alarm system on the premises would be "statutory employees" because in their work they solder wire connections. In State ex rel. Long-Hall Laundry and Dry Cleaning Company v. Bland, 354 Mo. 97, 188 S.W.2d 838, 842, it was said that the statute declares the operation performed by the workman must be a part of the usual business which the particular employer carries on. The term "operation performed by the workman" as used in the above cited case does not mean the specific act the workman was doing at the time he was injured, but it means the operation of the workman done in performing " 'work done under contract' ", which work is " 'an operation of the usual business which he [in this case Bell] there carries on' ". The defense that Shafer was a "statutory employee" pursuant to Section 287.040 is an affirmative defense, and the record now before us does not establish this defense. The trial court did not err in refusing to direct a verdict for Bell for this reason.

Bell also contends the trial court erred in refusing to give two instructions submitting the defense that Shafer was a statutory employee. Both of these instructions hypothesized only the specific act of lacing cable as constituting an operation of the usual business which Bell carried on

in the premises and therefore were properly refused.

In plaintiff's appeal from the judgment in favor of A. T. & T. the only action of the trial court complained of is the refusal to give the following instruction: "The court instructs the jury that if you find and believe from the evidence that the defendant, Southwestern Bell Telephone Company and the defendant, American Telephone and Telegraph Company were at all times herein mentioned associated together and engaged in the operation of the Beaumont Telephone Exchange · for the purpose of transmitting telephone messages, and that each of them received revenue therefor and if you further find and believe that each of them owned, controlled and operated telephone equipment in said exchange in conjunction with each other for the operation of such business, then, the court futher instructs you that if you find for the plaintiff and against the defendant Southwestern Bell Telephone Company under instruction No. 1, then, and in that event your verdict must be in favor of the plaintiff and against both defendants."

Plaintiff contends that Bell and A. T. & T. were engaged in a joint adventure, and that each member of a joint adventure "is responsible for the negligent acts of another if within the scope and object of the joint undertaking." State ex rel. McCrory v. Bland, 355 Mo. 706, 197 S.W. 2d 669 [5], 673, 168 A.L.R. 929. A. T. & T. contends that the plaintiff did not plead the existence of a joint adventure, that the instruction is in conflict with another instruction of plaintiff, and that it is not supported by the evidence. We need not rule on these contentions.

 A "joint adventure," as a legal concept, is of comparative recent origin, Neville v. D'Oench, 327 Mo. 34, 34 S.W. 2d 491, 503, and is founded entirely on contract, either express or implied. It can exist only by voluntary agreement of the parties to it. It has been defined as an "association · of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." 48 C.J.S., Joint Adventures, § 1 a. It is in the nature of a partnership, generally governed by the same rules of law, the principal difference being that a joint adventure is usually limited to a single transaction. . As a general rule, in order to ·constitute a joint adventure, there must be a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits and a duty to share in the losses as may be sustained. 48 C.J.S., Joint Adventures, § 2 a. See, also, Gales v. Weldon, Mo. Sup., 282 S.W.2d 522 [3]; Scott v. Kempland, Mo.Sup., 264 S.W.2d 349 [1–5]; Brooks v. Brooks, 357 Mo. 343, 208 S.W. 2d 279 [5], 4 A.L.R.2d 826; State ex rel. McCrory v. Bland, supra; Stouse v. Stouse, Mo.App., 260 S.W.2d 31 [2–5]; Wood v. Claussen, Mo.App., 207 S.W.2d 802 [16].

 The purpose of a verdict-directing instruction is to make clear to the jury the essential fact issues it must decide, and therefore the instruction must present the facts essential in law to support the verdict. Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756 [4]; Brooks v. St. Louis Public Service Co., Mo.Sup., 275 S.W.2d 252 [2]. It is readily apparent that the requested instruction in this case directed the jury to return a verdict against A. T. & T. upon a finding of less than the essential facts to constitute as a matter of law a joint adventure. The instruction was properly refused. The trial court committed no error prejudicial to plaintiff in the respects contended in the brief, and the judgment in favor of A. T. & T. is affirmed.

 Plaintiff was not entitled to a res ipsa loquitur submission of her cause against Bell, but since there are circumstances shown by the record from which inferences of specific negligence on the part of Bell might be drawn (see Cudney

v. Midcontinent Airlines, Inc., 363 Mo. 922, 254 S.W.2d 662), and because it appears that plaintiff's submission clearly was a "misadventure upon a mistaken legal theory" as to the extent of the res ipsa loquitur doctrine under the facts of this case as distinguished from "legal strategy" (see Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692), the judgment for plaintiff against Bell is reversed and remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.