Gloria **BELL**, Appellant,

v.

Gordon **GREEN** and Fruehauf Trailer Company, a Corporation, Respondents.

No. 53129.

Supreme Court of Missouri,
In Banc.

Jan. 22, 1968.

Rehearing Denied Feb. 12, 1968.

**726**

Gerritzen & Gerritzen, by Ray A. Gerritzen, St. Louis, for plaintiff-appellant.

Robert H. Burns, Clayton, for respondent, Green.

F. X. Cleary, Paul S. Brown, Daniel T. Rabbitt, Jr., Moser, Marsalek, Carpenter, Cleary and Jaeckel, St. Louis, for respondent, Fruehauf Trailer Co.

EAGER, Judge.

Plaintiff sued Gordon Green and the Fruehauf Trailer Company jointly for personal injuries sustained when the car in which she was riding struck a Fruehauf tractor-trailer on U. S. Highway 66 on Jan. 21, 1959, about 7:50 a.m. One Perry Becker was the driver of the car; plaintiff was a passenger in the front seat; Green and Carol Brocato (then Hawkins) were in the back seat. The jury returned a verdict for $14,500 against Green and in favor of

Fruehauf. Green's after-trial motion for judgment was sustained, and plaintiff's motion for judgment or a new trial against Fruehauf was overruled. Plaintiff appealed to the St. Louis Court of Appeals where an opinion was filed on July 21, 1967, affirming the action of the trial court. Subsequently, we ordered the case transferred here on plaintiff's application. In the application for transfer plaintiff's counsel specifically asked that we "transfer her appeal as to Defendant Gordon Green" for the various reasons alleged. We consider, and rule, that plaintiff has affirmatively abandoned her appeal as to Fruehauf, although certain points as to that defendant had been briefed in and ruled by the Court of Appeals. They will not be further considered here. We shall consider plaintiff's case against Green as though brought here upon an original appeal.

The principal issue arose from the fact that defendant Green was a minor, not yet 20 years of age. Becker was also a minor, which is not so material; both girls were minors, plaintiff being 17, Carol 14. As will be developed later, the collision occurred in the lane of the tractor-trailer, under circumstances which obviously would create a submissible case of negligence against the driver of the car. In plaintiff's amended petition it was alleged: that Green was a passenger in the 1958 Chevrolet and that Becker was operating it under Green's "direction, authorization and orders"; that Becker was the "Instrument" of defendant Green, and on a joint venture with him; that Green, through Becker, was negligent in crossing into the westbound lane of the highway and into collision with the tractor-trailer, and in driving onto the wrong side of the highway. We omit all allegations of negligence as to Fruehauf. Green's answer consisted of denials of the substantive allegations of the amended petition and a plea of contributory negligence; also, an affirmative allegation that Green was a minor, and that he was asleep in the rear seat at the time of the collision. We note here that Becker

was killed almost instantly in the collision; so far as the record shows, no suit was filed against his estate.

We shall endeavor to restrict our statement of the rather voluminous evidence as much as is practicable. Green and Becker worked at the McDonnell Aircraft plant in St. Louis County; they lived at Green's sister's house in "Villa Ridge" in Franklin County located on U.S. Highway 66, and drove back and forth to work in the Chevrolet in question. The evidence fairly showed that the title to the car in question, acquired in July, 1958, was in the name of Green's father, Chester Green, who lived at Hartshorn, Missouri (Green's claimed place of residence), but that Green had made all the payments on it with his own money and had kept it continuously in his possession and control; he said that his father used it when he wanted to; he further testified that his father turned in a 1950 truck as the down payment on the car. In any event, Green had been using the car continuously for months and no other use was specifically shown. He had referred to it as "his car." Green and Becker had met the two girls in question at the "Diamonds," a restaurant located very near Green's sister's home; the girls had worked there for a few weeks as waitresses.

There are discrepancies in some parts of the evidence, but we shall follow the version of the plaintiff and her witnesses whenever available, since she had a verdict. The boys picked up Carol at about 7:00 p. m. on Jan. 20, in Green's car; they went to a movie in Pacific, drove around some, and then picked up Gloria Bell (then Webb) at the Diamonds at about 11:00; they went to another restaurant and ate, came back to the Diamonds and parked in the driveway of the "dormitory" for a period described as from one to two hours. There is no evidence that anyone drank any alcoholic beverage at any time. After such lapse of time *someone* suggested (no one ever admitted who did so, and Green denied that he did) that they drive to Rol-

la. It had been snowing or sleeting intermittently during the evening and this continued at the time. Nevertheless, the group drove to a nearby filling station and got gas, which Green paid for; up to that time Green had done all of the driving. Green went to the restroom and perhaps Becker got out. Plaintiff's evidence was that when Green came out he asked Becker to drive or suggested that he drive, that the girls changed seats and Green got in the back seat. Green denied this and testified that Gloria had made some protest of Becker's actions and that when he came out of the station Becker and Gloria were already in the front seat, so he got in back. Plaintiff and Carol vehemently denied this. At any rate, Becker drove the remainder of the ill-fated expedition. No one knew what time they left for Rolla, but the speculation was that it was around 3:00 a. m. The girls, according to their testimony, soon went to sleep and remembered substantially nothing of any subsequent occurrences until after the accident; the only exception was that Carol said she faintly remembered the car being turned around after daylight and starting towards home.

At perhaps 5:30 or thereabouts (only Green testified on this) Becker stopped at a restaurant, which Green *thought* was in Sullivan, and the two boys ate breakfast. Green did not remember the girls going in; both of them denied doing so. When the boys returned to the car, Becker, having kept the keys, took the driver's seat and resumed driving. The bad weather continued, with snow and sleet, during all or part of the time, although Green thought the snow and sleet had slackened when they finished breakfast. He testified, however, at that time that "it would be dangerous to drive." It was not shown that at any time Green gave Becker any specific directions about driving. In any event, Becker continued driving. Green testified that he went to sleep in the back seat, and subsequently the collision occurred. Many facts are vague. Carol says she remembered the car being turned around at a place where

there were some butane tanks, because the "weather was getting bad." That would seem to indicate that Becker drove on some distance towards Rolla but later turned back. Green gave no such testimony, but it seems to be conceded that Becker was driving east, back towards home, at the time and place of the collision.

Highway 66 was then a three-lane road, approximately 28 feet wide. The Fruehauf unit was headed west, a tractor with trailer, of a total length of 50 feet. Melvin DeGrasse, its driver, was the only witness who knew anything personally about the facts of the accident; he was put on the stand by the plaintiff. We shall omit many controversial details which could only concern the liability of Fruehauf. DeGrasse had spent the night at a motel outside of St. Louis and had driven about 45 miles westerly at the time of the collision; the trailer was empty, in the process of being delivered to Ft. Worth; although it was daylight, the "marker" or parking lights were burning on the tractor and trailer. In substance, DeGrasse testified: that the road was icy in patches, with snow and sleet "squalls"; that the road was straight with a slight downgrade toward the west; that he had come up behind a cattle truck (covered with a canvas) to a point about 100 feet from it; that the truck was moving at about 38 miles an hour, and DeGrasse had accelerated slightly intending to pass it, but he saw the Green car coming east about 1100–1200 feet away and saw also that at about 900 feet it began to enter the center lane; he determined then not to pass the truck until the car had passed; that he, DeGrasse, was traveling at approximately 35–40 miles an hour strictly in his own lane; that he estimated the speed of the car at about 60; after he saw it begin to enter the center lane it was obscured by the cattle truck, and when he next saw it, it was just clearing the left rear corner of the cattle truck and coming into his westbound lane at the same speed, headed directly at his vehicle; that he pulled his vehicle to the right, and

did not have time to sound any horn; that his tractor was largely on the right shoulder at the time of impact; that the front, chiefly the left front, of the car struck the left rear side of his tractor; the car was demolished and the tractor was later rebuilt. The car bounced or was knocked backward about 56 feet, ending upon the south shoulder. When DeGrasse saw the Green car coming into his lane at approximately 100 feet, he saw no driver, although he could see the back of the front seat. He further testified: that probably a second elapsed from the time he saw the Green car clearing the cattle truck until the impact; that the cattle truck was probably eight feet wide, and that it was running very close to the line dividing the center lane from the westbound lane; that he could distinguish the dotted lines on the road; that his only thought was to try to get out of the way; that his speed originally was about 40 miles an hour, but that he had slowed down some when he first saw the car enter the center lane; that his tractor was equipped with a governor set at 55 miles an hour.

Jim [sic] Thompson, a former highway patrolman, then employed at Washington University, testified: that he was at his home in St. Clair at the time of this collision, but he answered this call, arriving at the scene at 8:25 a. m.; that the roadway was snow and ice covered; that the people had all been removed from the car; he examined the vehicles, the roadway, and talked with Mr. DeGrasse; that he found what he believed to be the point of impact, so located from certain parts of the dirt and debris, and that it was approximately one foot over into the westbound lane of the tractor-trailer (no suitable objection was preserved to such conclusory testimony), although there was other debris scattered all around; he found the tractor on the north shoulder headed southwest, with the end of the trailer on the highway at an angle, the rear being 33 feet west of the point of impact; that the road there ran practically east and west; the car was 56

feet southwest of the point of impact, headed generally east; that the road conditions were such that a sudden application of brakes would cause a skid, and a sudden swerve would have been dangerous.

■ Under these circumstances, we need digest only a small part of Green's further testimony, for plaintiff is entitled to have us consider only that part favorable to her. He testified, in person or by deposition, that: Becker had asked to use the car earlier on the fatal evening to go to the Diamonds, but that he had refused and told Becker that he would go with him; that Becker had driven the car for several hours before the collision, and he had never told him to quit or asked for the keys; that he went to sleep about 15–20 minutes before the collision and knew nothing of it; that when he woke up after the collision Becker was slumped over the wheel; that he had made the payments on the car with his own money, had paid for all repairs, paid for the oil and gas, and kept both sets of keys; that he and Becker had both worked at McDonnell's on Jan. 20, 1958, the day before the collision; that there was no pre-arranged date with the girls; that snow and sleet had continued, at least spasmodically, from the time they left the Diamonds (and perhaps earlier) until the time of the collision, and that shortly before the collision it was "dangerous" to drive; that when he went to sleep the highway was "ice covered."

Plaintiff submitted her case upon the theory that Becker was driving the car "as the instrument" of Green, and that if Becker was negligent in certain hypothesized respects, and such negligence concurred with the acts of Fruehauf in causing the injuries, then Green was liable (except for a possible finding of contributory negligence). Another instruction attempted to explain the use of the word "instrument"; we shall not find it necessary to pass upon its propriety. Plaintiff's counsel insist here that the Court erred in setting aside the verdict against Green and

in entering judgment in his favor because: the evidence clearly showed that Green had at all times the right of control of the car and that he was present in it; that Becker was acting as the "instrument" of Green when he drove the car into the wrong lane, for which Green is liable; and that no "agency" as such was necessary. Counsel for Green say: that Green was a minor and could not appoint an agent; that he was asleep and did not participate in any way in the driving; that neither upon any theory of instrumentality or otherwise could the negligence of Becker be imputed to Green; also, that if there was any joint venture, a member thereof, i. e., plaintiff may not impute the negligence of Becker to Green.

The Court of Appeals held: that Becker was not and could not be the agent of Green, because a minor cannot appoint an agent; that there was, under these circumstances, no imputed negligence; and that Green, he being asleep, did not participate in Becker's negligence, and that his mere presence did not make him liable. Plaintiff relies very largely on the case of Haynie v. Jones, 233 Mo.App. 948, 127 S.W.2d 105. There, the minor son of the owner of a car had taken it out on a pleasure trip and picked up three other friends, all minors. One of these, a boy, was driving at the time the car hit a pedestrian and killed him. The son of the owner was sitting beside the driver in the front seat, specifically watching the side of the road to see that they did not go off the road, and he had made at least one suggestion about the driving. The contentions of the plaintiff, were, in part, the same as those here, including the theory that the driver was a mere instrument; but it was also claimed that actually *both* of the boys were driving the car. The Court upheld the liability of the son, as well as that of the driver; it disclaimed the theory of imputed negligence, but relied upon evidence showing the son's right of control and his actual participation in the driving, holding that he thus became and was concurrently negli-

gent. On these facts it held that the driver was a mere instrumentality; but in so doing the Court expressly distinguished the case of Hodge v. Feiner, 338 Mo. 268, 90 S.W.2d 90, where the minor defendant was not present in the car and, of course, was not participating. The Haynie case was submitted to the jury upon the theory that *both* of the defendants were driving the car; actually, the son seems to have been held liable primarily because of his own concurrent negligence.

Plaintiff cites and discusses sundry cases in which *adult* defendants, riding in cars over which they had full control or right of control, have been held liable for the negligence of their drivers; in such cases the defendant is also ordinarily the owner of the car. It would be useless to discuss those cases, for they proceed definitely upon the theory of agency and of imputed negligence because of the agency; some have proceeded more specifically upon the doctrine of joint venture. See generally: Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014; James v. Berry, Mo.App., 301 S.W. 2d 530; Hill v. St. Louis Public Service Co., Mo., 64 S.W.2d 633; Blashfield, Cyclopedia of Automobile Law & Practice, Vol. 5A, § 3132; Berry, Automobiles, Sixth Ed., Vol. 1, § 642; Ritchie v. Burton, Mo.App., 292 S.W.2d 599; Counts v. Thomas, Mo.App., 63 S.W.2d 416.

In Hodge v. Feiner, 338 Mo. 268, 90 S. W.2d 90, 103 A.L.R. 483, the Court considered the liability of a minor son of the owner of a car who had taken it out with permission and had picked up several other minors. One of the latter was driving the car around while the son talked to a filling station operator. During this period the injury occurred. The Court held that the son was not liable. The Court held specifically that the son, a minor, could not legally appoint or have an agent for the purpose of driving the car and that the driver's negligence could not be imputed to him. The Court expressly distinguished a prior Springfield Court of Appeals case, McKerall v. St. Louis-San Francisco R.

Co., Mo.App., 257 S.W. 166, on the ground that the deceased minor there (riding as a passenger in the front seat) "actively participated in the negligence" of the driver in driving the car upon a railroad track in front of a train. The Hodge case stands firmly for the theory that a minor cannot have an agent under such circumstances; and that a minor, not in control of a car at the time of an injury and not participating in the driving, is not liable for the driver's negligence, because he or she cannot legally have an agent; ergo, no imputed negligence.

■ The theory of liability based upon a right to *control* the driving of a car is dependent upon "common law principles applicable to the relation of master and servant or principal and agent." 8 Am. Jur.2d, Automobiles, § 572, p. 123. And the owner is only chargeable with the negligence of the driver when the doctrine of respondeat superior may be invoked. Id.

■ The theory now advanced in this case, i. e., that a minor may have an "instrument" but not an agent is unsound as applied to the facts we have here. The so-called "instrument" cases are sustainable upon the theory that the minor defendant is not only present in the car with the right of control, but that he is participating in the driving. Otherwise, they would simply constitute an *evasion* of the universally recognized rule that a minor may not appoint an agent. The same principle excludes consideration here of the theory of a joint venture, for that relationship is founded upon a contract of express or implied partnership or agency. State ex rel. Knight Oil Co. v. Vardeman, Banc, Mo., 409 S.W.2d 672; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109; Gales v. Weldon, Mo., 282 S.W.2d 522; Anderson v. Steurer, Mo., 391 S.W.2d 839; Haynie v. Jones, supra. In Shafer, supra, the Court said, at 295 S.W.2d, loc. cit. 116: "A 'joint adventure,' as a legal concept, is of comparative recent origin, Neville v. D'Oench, 327 Mo. 34, 34 S.W.2d 491, 503,

and is founded entirely on contract, either express or implied. It can exist only by voluntary agreement of the parties to it. It has been defined as an 'association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.' 48 C.J.S. Joint Adventures § 1 a. It is in the nature of a partnership, generally governed by the same rules of law, the principal difference being that a joint adventure is usually limited to a single transaction. As a general rule, in order to constitute a joint adventure, there must be a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits and a duty to share in the losses as may be sustained. 48 C.J.S. Joint Adventures § 2 a." Since an infant cannot make a valid contract and cannot become a partner, he may not be a member of a joint venture within the legal meaning of the term. The doctrine of joint venture has sometimes been applied in cases arising from automobile collisions, usually to impute contributory negligence (as James v. Berry, Mo.App., 301 S.W.2d 530), but we fail to see how it can logically be applied to a minor. Haynie and McKerall, supra, have already been discussed and distinguished. They rested on further facts. In citing Counts v. Thomas, Mo.App., 63 S. W.2d 416, where the liability of the owner's son (present in the car) was fixed upon the theory of imputed negligence, by reason of his right of control, and perhaps partially on a theory of "joint enterprise," plaintiff's counsel erroneously state in their reply brief that the defendant was a *minor*. It is expressly stated at 63 S.W.2d, loc. cit. 418, that the defendant was *"the adult son"* of the owner. We hope this mistake was inadvertent.

Plaintiff's counsel has cited Woodson v. Hare, 244 Ala. 301, 13 So.2d 172, and Wilson v. Moudy, 22 Tenn.App. 356, 123 S.W. 2d 828, as authority for the liability of Green. In the first place, we feel that our own law is sufficiently settled that we should follow it to the exclusion of out-state cases, at least until we are convinced that it is wrong. We are not so convinced here. In Woodson, the negligence of a minor driver was apparently imputed to the minor (defendant) daughter of the owner of the car, she being present in it. The decision was apparently based upon the daughter's supposed right of control and a theory of joint venture, although seeking to avoid a finding of strict agency. In so doing the Court seems, in certain places, to have lost sight of the defendant's minority, particularly in discussing generally the liability of an owner because of his right of control; finally, however, the Court held that the negligence, committed by an "alter ego" appointed by the minor, might be imputed to her. For all the reasons heretofore stated, and because the opinion is, in our view, out of harmony with our cases and illogical, we decline to follow it. The same may be said generally of the Wilson case, supra.

We suggest that if a minor is to be held liable in such actions merely because of his presence in the car and a supposed right of control, such liability may and should be declared by the legislature. Such liability, however evasively expressed, rests upon imputed negligence through a relationship of principal and agent. We do not choose to declare, as a matter of common law, that a minor may appoint an agent for one purpose but not for any other. It may well be that this involves a matter of public policy which should be regulated by legislation.

 There is one principle which might involve a possible liability on the part of Green, the validity of which, as applied to these facts, we do not decide; this for the reason that the case was not pleaded or submitted on that theory and we do not know what the evidence may be upon a possible retrial. A minor is always liable for *his own* negligence. Hodge v. Feiner, supra. In this case Green obviously had the right to designate the driver of the car,

and presumably to continue or discontinue the trip; he knew the weather and road conditions, knew that Becker had worked the preceding day and had had no sleep, but he permitted him to continue driving from perhaps 3:00 a. m. until the time of the collision at 7:50; and this, notwithstanding the fact that the driving conditions were admittedly "dangerous" when they finished breakfast, that the girls had long since gone to sleep and that Green himself soon succumbed to sleep, leaving Becker alone responsible. Obviously, Becker also had gone to sleep just prior to the collision. We refer, by way of analogy, to the line of authorities holding that the owner of a car may be liable if he, knowingly or having the means of knowledge, turns his car over to a driver who is incompetent by reason of age, inexperience, habitual recklessness or otherwise; such liability further depends upon a finding that the act of the owner concurs with the negligence of the driver as a proximate cause of the injury. Thomasson v. Winsett, Mo.App., 310 S.W.2d 33; Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696; Saunders v. Prue, 235 Mo.App. 1245, 151 S.W.2d 478; Lix v. Gastian, Mo.App., 261 S.W.2d 497; Ritchie v. Burton, Mo.App., 292 S.W.2d 599; 8 Am.Jur.2d, Automobiles, § 573, p. 125; Restatement of Torts, Vol. 2, § 390, and illustrations listed at p. 316; 36 A.L.R. note, loc. cit. 1148; 68 A.L.R. note, loc. cit. 1013; 100 A.L.R. note, loc. cit. 923. Thus, it is said in 8 Am.Jur. 2d, at loc. cit. 127: "Nor does such liability rest upon imputed negligence or upon ownership or agency; it rests upon the combined negligence of the owner and the driver—negligence of the owner in entrusting the vehicle to an incompetent driver, and negligence of the driver in its operation." This rule has been applied to the act of an owner in permitting an intoxicated person, or one likely to become intoxicated, to drive. 8 Am.Jur.2d, § 576, pp. 130–131, and cases there cited. And see, particularly, Harrison v. Carroll, C.A. 4, 139 F.2d 427. The facts of the present case do not coincide with the precise facts of any

of the cases decided upon that theory, so far as we have seen. In Ritchie v. Burton, supra, the Court noted that the personal negligence of the owner-passenger in entrusting the driving to an inexperienced person was not pleaded or submitted. The case was reversed on instructions and remanded.

■ Plaintiff having affirmatively abandoned her appeal as to defendant Fruehauf Trailer Company, the judgment is affirmed as to it; that judgment should be held in abeyance, pending a final disposition of the case as to Green. The judgment entered for defendant Green is reversed and the cause remanded in order that plaintiff may, if so advised, ask leave to amend her petition and thus seek a retrial. We deem it unfair to tax all the costs of this appeal upon the defendant Green, although the judgment in his favor has been reversed; it is ordered that they be equally divided between plaintiff and that defendant.

All concur except SEILER, J., who concurs in result in separate concurring opinion filed.

*Concurring Opinion*

SEILER, Judge.

Although Hodge v. Feiner, 338 Mo. 268, 90 S.W.2d 90, states specifically that the defendant there, being a minor, could not be held in tort on the doctrine of respondeat superior, the court did not say this was the only way a minor could be vicariously liable in tort. It did not discuss what the situation would have been had the minor been present in the car. It several times stressed the fact the tort was not committed in the minor's presence. Indeed, at one point, 90 S.W.2d 1. c. 91, the court seems to say that *since* the minor was not present in the car it was incumbent on plaintiff to establish agency but this could not be done against a minor. In its discussion of McKerall v. St. Louis-San Francisco Ry. Co., (Mo.App.) 257 S.W.

166, which involved a minor who was present in the car with right of control, the court distinguishes it from Hodge v. Feiner on the ground that the former involved a minor who was present and had the right to direct the driver of the automobile in the manner of its operation, while the latter sought to hold the minor in tort *solely* on respondeat superior, when the minor was not present.

There are several Missouri cases which charge the person who has the right of control and who is present in the car with the negligence of the driver when they are engaged in something of mutual interest, even though it clearly is not a joint adventure or enterprise in the technical sense at all, involves no element of contract, partnership, profits or losses and, actually, no master-servant or principal-agent relationship in fact. For example, in Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014, plaintiff and his wife were merely returning home in plaintiff's car after a visit with plaintiff's mother-in-law. In James v. Berry (Mo.App.) 301 S.W.2d 530, plaintiff and her brother, who was driving her car, were returning to her home after a fishing trip. In Counts v. Thomas (Mo.App.) 63 S.W.2d 416, the parties were on a pleasure trip, the son of the owner riding and a friend driving. If defendant Green had been twenty-one years old, his responsibility for the negligence of Becker would probably not be considered debatable, but under the facts before us, liability should not turn on the happenstance of whether the defendant is just under or just over the age of twenty-one. Defendant was present and clearly had the right of control and he and the driver were jointly engaged in an evening of mutual pleasure—what is commonly referred to as a "double date" and which does not require agency or contract.

Therefore, while I concur with the action of the majority in reversing and remanding this cause and Brocato v. Green et al., Mo., 423 S.W.2d 735, for the purposes stated, I must respectfully dissent from that portion of the opinion which seems to me to hold that liability based upon right to control, when the owner is present in the car, can exist only when the facts and the ages are such as to show the existence of a master-servant or principal-agent relationship between the owner and driver, or a true joint adventure relationship founded on contract.

On Rehearing

PER CURIAM.

Plaintiff's motion for rehearing consists largely of a reargument of the issues discussed and decided in our opinion. Counsel assert that we misconstrued the opinion in Haynie v. Jones, 233 Mo.App. 948, 127 S.W.2d 105, in stating that the case was actually submitted to the jury upon the theory that both defendants were driving. A close examination of the opinion will show that Instruction No. 2 submitted that issue (loc. cit. 109) and the Court (at loc. cit. 110) obviously regarded that submission as a necessary element of plaintiff's case. Thus, we believe that our interpretation of the opinion was correct, but we further note that it is not binding upon us in any event insofar as it may be contrary to our opinion. Counsel for plaintiff also assert that if the case is to be reversed and remanded, it should be retried only on the issue of liability because "no one has contested" the amount of the verdict. Defendant Green raised an issue of excessiveness in his motion for a new trial, but when judgment was entered in his favor and plaintiff appealed, the amount of the verdict was in nowise an issue; the matter was not briefed or considered on appeal. Under these circumstances, we should not foreclose the defendant on that issue. Plaintiff's motion for the adoption of the concurring opinion of Judge Seiler or for a rehearing is overruled.

Defendant-Respondent Green has filed a motion for rehearing, basically upon the

contention that we have violated § 512.160 (2), RSMo 1959, V.A.M.S. and Rule 83.13, providing that no appellate court shall reverse a judgment unless it believes that material error was committed by the trial court against the appellant; also, that without a proper reversal there can be no remand for a new trial. More specifically, it is thus argued that we have actually affirmed on the merits the action of the trial court in entering judgment for defendant Green on this record, but have remanded for possible amendment and retrial upon a different theory.

Our courts have frequently declared the principle that: " ' "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." ' East v. McMenamy, supra at page 732, of 266 S.W.2d 728." Yarrington v. Lininger, Mo., 327 S.W.2d 104, loc. cit. 111. Defendant Green apparently recognizes this principle, but insists that we did not rightly reach that point in the present case. It is true that in substantially all of the cases in which that principle has been declared the appellate court did find some error, usually in the failure of the plaintiff to make a submissible case. Reece v. Reed, Mo., 326 S.W.2d 67; Smith v. St. Louis Public Service Co., Banc, 364 Mo. 104, 259 S.W.2d 692; Houfburg v. Kansas City Stock Yards of Maine, Mo., 283 S.W.2d 539; Snyder v. Jensen, Mo., 281 S.W.2d 819; McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704. These cases illustrate the liberality exercised in remanding for a new trial where there has been a reversal.

In essence, defendant's counsel say here that we had no right to reverse. Our action in doing so, and in remanding, was motivated by the particular circumstances of this case, in that plaintiff's counsel had relied upon a theory discussed in the case of Haynie v. Jones, 233 Mo.App. 948, 127 S.W.2d 105, which case had not been overruled or disapproved. The theory (more fully discussed in our opinion) was that the driver might be considered as the "instrument" of the minor defendant so as to make the latter liable for the driver's negligence. We have now disapproved that theory, but for the first time. We have held that plaintiff's theory of submission was erroneous. The trial court, it is true, corrected that by the entry of judgment for defendant Green.

In Aiken v. Clary, Mo., 396 S.W.2d 668, this Court held upon plaintiff's appeal from an adverse verdict and judgment, that his evidence in a malpractice case was insufficient because it did not include the necessary expert testimony; it further found, however, that plaintiff and his counsel had relied upon a prior decision of this Court holding, under rather similar circumstances, that such testimony was not necessary. Mitchell v. Robinson, Mo., 334 S.W.2d 11, 79 A.L.R.2d 1017. It thus appeared that plaintiff's evidence was not in fact insufficient under the law as it stood at the time of trial. The Court nevertheless reversed, but remanded the case for a new trial because plaintiff had been misled by the prior state of the law. The further finding of error on the voir dire is immaterial in any consideration of our present point, for it was of no importance in view of the finding that no submissible case was made; that matter was obviously included merely as a guide for another trial. The Aiken case, supra, is authority for a reversal without a finding of specific error, under such unusual circum-

stances as are present here. We do not consider that the spirit of either the statute or the rule has been violated. For a further analogy, see also Cudney v. Mid-continent Airlines, Banc, 363 Mo. 922, 254 S.W.2d 662; there the cause was remanded upon a determination (for the first time) that the res ipsa doctrine was inapplicable in suits for injuries to airline passengers.

Defendant also complains of our order dividing the costs; we adhere to that ruling. The motion of Defendant-Respondent Green for a rehearing is overruled.