(No. 77-CC-1751—)

RAYMOND J. WHITE, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 28, 1978.*

POLOS, C.J.

This is a claim brought by Raymond J. White, formerly an inmate of Joliet Correctional Center in Stateville, for the conversion of certain items of clothing.

On or about January 18, 1976, Claimant had purchased certain items of new western clothing at the Libertyville Tack Shop, Libertyville, Illinois, namely, a sheep lined leather jacket for $175.00, a sport shirt for $32.95, a pair of sport slacks for $36.95, and a lizard skin belt for $22.95. He wore these clothes to his trial on January 23, 1976, at the Oak Lawn Court House in Oak Lawn, Cook County, Illinois. He was convicted and

that same day sent to the Cook County Jail. Following his conviction, his wife tried to bring other clothes to him while he was still in the Oak Lawn bull pen and while he was at the Cook County Jail, but she was not permitted to give him the change of clothing.

On January 30, 1976, Claimant was transferred from Cook County Jail to the Diagnostic Depot, Joliet Correctional Center, Joliet, Illinois

At Joliet he was issued prison clothing in place of the recently purchased clothing he was wearing. He told one Lt. Hefley, the officer in charge of the receiving process, that he would either pay to have his clothing shipped home or his wife would pick the items up.

Lt. Hefley gave him Official Receipt No. 04214 and told him to sign it. The receipt had his name, number, and the date on it, but otherwise it was blank. With a pen furnished by Lt. Hefley, Claimant listed his leather jacket, sport shirt, sports slacks and leather belt. That night in his cell, with a different pen, he wrote in the prices he had paid for the items.

About three weeks later his wife came to Joliet to pick up his clothing and was told that someone else had picked them up on January 9, 1976, which was prior to the date of his trial.

The Joliet Correctional Center, in a memorandum dated November 14, 1977, forming part of the Departmental Report, indicated that an investigation conducted by it produced no information as to the disappearance of Claimant's clothing.

"Lieutenant Hefley was shown the attached copy of the Joliet Correctional Center, Official Receipt — Trust Fund receipt and stated that the signature was his, but could not identify the other witness's signature and could not say what happened to the resident's clothing . (The trust fund receipt is dated January 30, 1976.)"

"No records, other than the trust fund receipt, showing that this institution received this clothing, could be obtained to the whereabouts of Resident White's clothing and no information could be obtained as to the whereabouts of Resident Whites clothing during this investigation."

This Court has held in *Doubling v. State of Illinois, 32 Ill.Ct.Cl.1,* that the State has a duty to exercise reasonable care to safeguard and return an inmate's property when it takes actual physical possession of such property during the course of an inmate's transfer between penal institutions.

In *Bonner v. Coughlin, 517 F. 2d 1311 (1975),* our Court of Appeals, acknowledged a prisoner's rights to sue in the Illinois Court of Claims for loss of property occasioned by the negligent acts of State employees.

While bailment is ordinarily a voluntary contractual transaction between bailor and bailee, various types of constructive and involuntary bailments have been recognized:

"A constructive bailment can be created between an owner of the property and one in possession thereof." 4A Illinois Law and Practice 550, Bailments citing *Chesterfield Sewer & Water, Inc., v. Citizens Insurance Co. of New Jersey, et al., 57 Ill. App 2d 90, 207 NE2d 84.*

In *Chesterfield,* the Court quotes from *Woodson v. Hare, 244 Ala. 301, 13 So2d. 172, at 174,* as follows:

"An actual contract or one implied in fact, is not always necessary to create a bailment. Where, otherwise than by mutual contract of bailment, one person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he ought, upon principals of justice, to keep it safely and restore it or deliver it to the owner, such person and the owner of the property are, by operation of law generally treated as bailee and bailor under a contract of bailment, irrespective of whether or not there has been any mutual assent, express or implied, to such relationship."

The loss or damage to bailed property while in the possession of the bailee raises a presumption of negligence which the bailee must rebut by evidence of due care. The effect of this rule is not to shift the ultimate burden of proof from the bailor to the bailee, but simply

to shift the burden of proceeding or going forward with the evidence.

At the trial of this cause the State presented no testimony to explain the disappearance of Claimant's property, and prima facie case, therefore, stands unrebutted.

It is therefore ordered that Claimant be awarded the sum of $267.85.